UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SEAN WRIGHT, : | |
|     Plaintiff, : | |
| : | |
| v. : | No. 23-cv-5099 |
| : | |
| UNIT MANAGER FEDDER, *et al.*, : | |
|     Defendants. : | |

<u>**MEMORANDUM**</u>

**Joseph F. Leeson, Jr.**                                                                                                            **May 17, 2024**
**United States District Judge**

        Currently before the Court is Plaintiff Sean Wright's Motion to File an Amended Complaint (ECF No. 19)) and his separately filed Amended Complaint (ECF No. 20 ("AC")). In his AC, Wright, a convicted prisoner currently incarcerated at SCI Forrest, asserts individual and official capacity claims pursuant to 42 U.S.C. § 1983 against the following SCI Phoenix employees based on events that allegedly occurred at that facility: Fedder, Fondi, Kalb, Nurse Dan, Styles, Kirin, Gearvin, A. Jordan, Mergen, Augiar, Palmerchuckle, M. Dusel, Young, Mascellino, Terra, and Bradley. (AC at 2, 20-21.) For the following reasons, the Court will grant Wright's Motion insofar as it requests that the claims asserted against Nurse Dan in Wright's original Complaint be dismissed. The remainder of the Motion will be denied as moot in light of the filing of the AC. Upon statutory screening of the AC pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the official capacity claims asserted against Defendants Fedder, Fondi, Styles, and Kalb in the AC will be dismissed with prejudice. The excessive force claim asserted against Defendant Kalb, the failure to protect claims asserted against Defendants Fedder, Fondi, and Styles, previously served on these Defendants, and the battery claim asserted against Nurse Nick will proceed in this action. The Court will direct service of the AC on Nurse Nick, who was not

previously served.  The remainder of the AC will be stricken for the reasons stated herein.  If Wright wishes to pursue the stricken claims, he may do so in a separately filed civil action.

## I.   FACTUAL ALLEGATIONS[1]

### A.   Wright's Original Complaint

In his original Complaint, Wright asserted claims against Defendants Fedder, Fondi, Kalb, Styles and Nurse Dan in their individual capacities.  ("Compl." (ECF No. 2 at 2-4.))  Wright alleged that on December 23, 2021, he informed CO Jordan that he feared for his personal safety because of a conflict that existed between himself and inmates Green and Johnson, who were both housed on J Block, where Wright was due to be transferred upon leaving the RHU.[2]  (*Id*. at 13.)  Jordan allegedly ignored Wright's concerns and issued him a misconduct for refusing to leave the RHU.[3]  (*Id*.)  Wright allegedly repeated his concerns to Defendant Fedder, who also allegedly ignored him.  (*Id*.)  On December 28, 2021, Wright repeated his safety concerns to Defendant Fondi, disclosing that he had previously fought with inmates Green and Johnson.  (*Id*.)  Fondi allegedly ignored Wright's concerns and allegedly denied Wright the use of a cart to transport his personal property to J Block, instead forcing Wright to carry a 100-pound bag of property.  (*Id*.)

When Wright arrived at J Block, he allegedly expressed his safety concerns about inmates Green and Johnson to Defendant Styles.  (*Id*.)  Wright alleges that shortly thereafter, Styles allowed Johnson, who was wearing gloves and a mouth guard, into the area of J Block

---

[1] Unless otherwise stated, the allegations set forth in this Memorandum are taken from Wright's Amended Complaint.  (ECF No. 20.)  The Court adopts the pagination supplied by the CM/ECF docketing system.

[2] The Court understands this acronym to refer to a "Restricted Housing Unit."

[3] This misconduct was allegedly dismissed following a hearing before Hearing Examiner G. Yodis and Defendant Fedder, but Wright was threatened with 90 days of "DC" (disciplinary custody) if he refused to leave the RHU.  (Compl. at 13.)

2

where Wright was housed. (*Id*. at 14.) Styles watched Johnson follow Wright to his cell, where Wright alleges inmates Green and Johnson attacked him. (*Id*. at 13-14.)

After the alleged assault, Wright was escorted to the medical unit by non-defendant Correctional Officers ("CO") Mergen and Gearvin. (*Id*. at 14.) Wright alleges that after arriving at the medical unit, Nurse Dan "sliced" him on the back of his ear in view of Gearvin, who recorded the incident and allegedly taunted Wright, who was bleeding from the cut, by saying, "Ooh, leaking." (*Id*.) Wright alleges that Mergen also observed the assault and laughed at Wright. (*Id*.) Wright alleges that following the incident, he was placed in a Psychiatric Observation Cell for 72 hours, where he required several bandage changes because of continued bleeding. (*Id*.) Wright alleges that on December 29, 2021, he was interviewed by Deputy of Security Bradley, and that Wright told Bradley he wanted to press charges for the assault by Green and Johnson and the cut by Nurse Dan. (*Id*.)

Wright also alleged that on January 4, 2022, he was escorted to the shower by CO Saldana and Defendant Kalb, who allegedly taunted Wright and told him that staff had set him up to be attacked. (*Id*. at 14-15.) Kalb then allegedly slammed Wright to the ground, causing injury to Wright's elbow, knee, back, and shoulder, and resulting in significant blood loss. (*Id*. at 15.) Wright was escorted to the medical unit, where his injuries were treated and he was given pain medication. (*Id*.) Wright was seen by Dr. Anino on January 6 and 19, 2022, and was prescribed more pain medication. (*Id*.) Wright asserted an excessive force claim against Defendants Kalb, failure to protect claims against Defendants Fedder, Fondi, and Styles, and a state law battery claim against Nurse Dan. (*Id*. at 15-17.)

On January 2, 2024, the Court granted Wright leave to proceed *in forma pauperis* and directed service of his original Complaint upon Defendants Fedder, Fondi, Kalb, Styles, and Nurse Dan. (ECF No. 5.) On January 31, 2024, Defendants Fedder, Fondi, Kalb, and Styles

3

returned executed waivers of service to the Court and on February 29, 2024, they filed an Answer to the Complaint.  (ECF Nos. 14, 18.)  Nurse Dan did not return a waiver of service and on February 13, 2024, the Court directed service by summons upon Nurse Dan and forwarded a Form USM-285 to Wright for completion.  (ECF No. 17.)  Wright did not return the completed Form USM-285, but instead, on March 8, 2024, filed a Motion for Leave to File an Amended Complaint.  (ECF No. 19.)  The Motion did not include a proposed amended complaint.  (*See id*.)  On March 15, 2024, before the Defendants filed a response to the Motion and before the Court ruled on the Motion, Wright filed the AC.

### B.   Wright's AC

In his AC, Wright repeats the allegations giving rise to his claims against Defendants Fedder, Fondi, Styles, and Kalb.  (AC at 11-13.)  He repeats the allegations describing being cut in the medical unit, attributing the conduct to Nurse Nick, and omitting any claim against Nurse Dan.  (*Id*. at 11-12.)  Wright also adds new allegations, asserting unrelated claims against newly added Defendants, based on events that occurred after those described in the original Complaint.[4]

Wright alleges that on January 11, 2022, he filed grievances about assaults (he does not identify the assaults to which he refers), and about missing personal property.  (*Id*. at 13.)  He

---

[4] While Wright named each Defendant in the original Complaint in their individual capacities only, in the AC he checked the box on the form complaint he used indicating that he also seeks to name the Defendants in their official capacities.  The official capacity claims, which seek money damages, are not plausible.  Each named Defendant is an employee of the Commonwealth of Pennsylvania.  The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages.  *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003).  Suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment. *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989).  As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 Pa. Cons. Stat. § 8521-22, it and its departments, as well as their officials sued in their official capacities, are immune from suits filed in federal court.

alleges that after he did so, the named Defendants engaged in a "campaign of harassment," which included serving him contaminated food, depriving him of his legal papers, and confiscating or destroying his personal property. (*Id*. at 13-15.) Wright alleges he filed a further grievance on February 7, 2022 describing the conduct. (*Id*. at 14.)

With respect to his claim based on contaminated food, Wright alleges he was served contaminated food on approximately ten occasions in late January and early February 2022, as follows. On January 18, 2022, CO Pedragon allegedly served Wright a contaminated breakfast tray. (*Id*. at 13.) On January 20, 2022, COs Roberts and Garnett allegedly served Wright a contaminated breakfast tray. (*Id*.) On January 22 and 23, 2022, CO Garnett allegedly served Wright contaminated breakfast trays. (*Id*.) On January 31 and February 1, 2022, CO Unger allegedly served Wright contaminated breakfast and lunch trays. (*Id*. at 14.) Also on February 1, 2022, CO Shells allegedly served Wright a contaminated dinner tray. (*Id*.) Wright also alleges that Defendant Fedder directed CO Adebago to serve Wright poisoned food, which Wright consumed, and which allegedly caused him respiratory and digestive problems, including throwing up blood along with the alleged poison. (*Id*. at 18.) Wright does not allege when this occurred.

With respect to claims based on loss of his personal property, Wright alleges that on December 28, 2021, when he was escorted to the medical unit after being attacked by inmates Green and Johnson, he was not permitted to place his personal property in his cell before leaving the Unit. (*Id*. at 11.) He alleges that Defendant Styles did not safeguard his property, though he did secure and inventory property owned by Green and Johnson. (*Id*.) Wright alleges that upon arriving at the RHU from the Psychiatric Observation Cell, he asked Defendant Palmerchuckle to arrange for his personal property to be delivered to his new cell. (*Id*. at 12.) He does not describe any response to this request. On January 20, 2022, Wright informed non-Defendants

5

David, Sr., that he needed his personal property, and Davis allegedly told Wright that Defendant Palmerchuckle had sent an e-mail requesting it. (*Id*. at 13.) On January 22, 2022, Defendant Kirin allegedly took a request slip for Wright's personal property. (*Id*.) On February 3, Wright spoke to an unidentified CO about obtaining his personal property but was allegedly ignored. (*Id*. at 14.)

With respect to his access to court claims arising from denial of access to his legal paperwork, Wright alleges that on January 18, 2022, he showed a Court Order, whose contents he does not describe, to Defendant Terra, who instructed Young to gather Wright's legal paperwork. (*Id*. at 13.) Wright alleges that he was not taken to the property room to retrieve the paperwork and Young intentionally grabbed and delivered the wrong paperwork to Wright. (*Id*.) Wright requested assistance obtaining access to his paperwork on several occasions, as follows. On January 20, 2022, he alleges he informed Defendant Hough that he needed access to his paperwork because he had legal deadlines to meet. (*Id*.) On January 21, 2022, Wright allegedly informed non-Defendants Pedragon, Garnett, and Martinez that he needed access to his legal paperwork because he had deadlines to meet. (*Id*.) Wright alleges that on January 24 and 25, 2022, Defendants Kirin and Jordan and non-Defendants Garnett and Martinez ignored his requests for access to his legal paperwork and for a pass to the law library. (*Id*.) On February 2, 2022, Wright spoke to Defendant Jordan about his need for his legal paperwork. (*Id*. at 14.)

On February 7, 2022, Wright allegedly filed grievances about the "campaign of harassment" he was experiencing and wrote to non-Defendant Talarico and Defendant Mascellino about his need for his legal paperwork and his missing personal property. (*Id*. at 14.) On February 20, 2022, Wright allegedly wrote to Defendant Terra about his missing property. (*Id*.) On February 27, 2022, Wright wrote to Defendant Mascellino about both his legal paperwork and his personal property. (*Id*.)

6

Wright alleges he was taken to the property room on February 15, 2022 by Defendant Fedder, who told Defendant Martin not to call to determine what had happened to Wright's property. (*Id*.) On March 1, 2022, Defendant Jordan provided Wright with a request slip and told him to list his missing property. (*Id*.) On the same day, Defendant Augiar allegedly went to the property storage room and broke all of Wright's electronics, including a television, a keyboard, and a radio, allegedly in retaliation for Wright's filing of grievances. (*Id*.) On March 16, 2022, Wright alleges he spoke to Defendant Bradley about his property and was told put his claims in writing. (*Id*.) On March 23, 2022, Wright allegedly wrote to Facility Manager Sorber about his missing legal paperwork and alleged retaliatory acts by staff members. (*Id*.) On March 31, 2022, Defendant Martin allegedly confiscated and broke items of Wright's personal property, and Defendant Young threatened Wright, telling him to stop filing grievances or Young would hurt him. (*Id*. at 15.)

On April 13, 2022, Wright wrote to Facility Manager Sorber about the destruction of his personal property. (*Id*. at 15.) On April 22, 2022, Defendant Mascellino denied Wright the return of his property or compensation for it. (*Id*.)

Wright asserts failure to protect claims against Fedder, Fondi and Styles; an excessive force claims against Kalb; a deliberate indifference claim against Nurse Nick that the Court construes as a state law battery claim;[5] claims against Gearvin and Mergen for taunting him after

---

[5] To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[5] *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Wright does not allege that Nurse Nick was deliberately indifferent to a serious medical need, he alleges that Nurse Nick cut him behind his ear. (AC at 12.) Under Pennsylvania law, "battery is defined as an intentional 'harmful or offensive contact with the person of another.'" *Martin-McFarlane v. City of Phila*., 299 F. Supp. 3d 658, 670 (E.D. Pa. 2017). The conduct described by Wright more closely aligns with a battery claim than one for deliberate indifference. *See Brown v. Lackawanna Cnty*., 2019 WL 1177979, at *6 (M.D. Pa. Mar. 13, 2019) (citing *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d

7

Nurse Nick allegedly cut him; loss of property and access to courts claims against Gearvin, Mergen, Styles, Terra, Palmerchuckle, Fedder, Jordan, and Mascellino; retaliation and destruction of property claim against Augiar; and a claim against Grievance Hearing Officer Dusel for failure to investigate the claims Wright included in his grievances.  (*Id*. at 16-20.)  Wright also asserts that he was denied his constitutional right to equal protection when his property was not secured after the attack by Green and Johnson, but theirs was.  (*Id*. at 20.)  He alleges that because of the Defendants' conduct, he has lost all of his personal property and that civil and criminal claims he was pursuing have been lost.  (*Id*.)  He also alleges he has suffered physical injuries and experienced emotional distress.  (*Id*. at 4.)  He seeks money damages.  (*Id*.)

## II.   DISCUSSION

### A.   Wright's Motion for Leave to File an Amended Complaint

Wright's Motion was filed unnecessarily because at the time it was filed (nine days after Fedder, Fondi, Styles and Kalb filed their Answer), Wright was permitted to file an amended complaint as of right under Fed. R. Civ. P. 15(a).[6]  In the Motion, Wright asserts that after filing the original Complaint, he determined that the conduct ascribed to Nurse Dan was actually engaged in by Nurse Nick.  (Motion at 1.)  The Court construes this as a request to voluntarily dismiss all claims against Nurse Dan and will grant this request.  The remainder of the Motion

---

Cir. 2003) (court must liberally construe *pro se* litigant's pleading "and identify causes of action asserted therein without restriction to the labels specified by [the plaintiff].")

[6] Rule 15 provides that a party may amend its pleading once as a matter of course within twenty-one (21) days of service of the complaint, or within twenty-one (21) days after the service of a responsive pleading, or a motion filed under Rule 12(b), (e), or (f), whichever is earlier.  *See* F. R. Civ. P. 15(a).  In all other circumstances, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

will be denied as moot since the AC was filed as of right under Rule 15(a). The Court will direct service of the AC on Defendant Nurse Nick.

### B.     Misjoinder of Claims

While Wright was permitted to file the AC under Rule 15(a), certain claims he included therein do not comply with the joinder rules in the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 18(a) states that "[a] party asserting a claim, . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Federal Rule of Civil Procedure 20 allows a plaintiff to join multiple defendants in one action if: (a) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (b) "any question of law or fact common to all defendants will arise in the action." "For courts applying Rule 20 and related rules, 'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).

"But this application, however liberal, is not a license to join unrelated claims and defendants in one lawsuit." *Pew v. Little*, No. 22-1488, 2024 WL 967823, at *2 (E.D. Pa. March 6, 2024 (citing *McKinney v. Prosecutor's Office*, No. 13-2553, 2014 WL 2574414, at *14 (D.N.J. June 4, 2014) (internal quotations omitted). "'Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.'" *Gorrio v. Terra*, No. 23-4366, 2023 WL 8373167, at *6 (E.D. Pa. Dec. 4, 2023) (quoting *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Indeed, "[t]he courts[] . . . have frowned on prisoners' attempts to lump together their multifarious grievances about life in a single prison, let alone multiple prisons." *McKinney*, 2014 WL 2574414, at *15. To remedy a

misjoinder, a Court may add or drop a party or sever any claims. Fed. R. Civ. P. 21. Rule 21 "give[s] district courts broad discretion in deciding whether to sever a case by way of severing parties or claims." *Graudins v. Retro Fitness, LLC*, 921 F. Supp. 2d 456, 467 (E.D. Pa. 2013).

Wright's AC asserts distinct claims against two different sets of defendants that occurred during two different periods of time. In the original Complaint, he asserted an excessive force claim against Defendant Kalb, failure to protect claims against Fedder, Fondi, and Styles, and a battery claim against a SCI Phenix nurse (now identified as Nurse Nick) based on events that occurred in late December 2021 and early January 2022. In his AC, Wright reasserts those claims, but includes claims against a host of new Defendants who were not involved in the events giving rise to the original Complaint. The new claims – including, *inter alia*, claims for retaliation, destruction of property, and denial of access to the courts, and claims challenging Wright's conditions of confinement – arose after Wright allegedly filed grievances related to the incidents described in the original Complaint and are asserted against newly named Defendants. The two sets of claims do not belong in a single lawsuit.[7] *See Thompson v. Ferguson*, 849 F. App'x 33, 36 (3d Cir. 2021) (*per curiam*) ("Misjoinder of claims occurs when, among other things, the events that give rise to the plaintiff's claims do not stem from the same transaction."); *see also*, *Roudabush v. United States*, No. 11-980, 2011 WL 13225005, at *6 (D.N.J. July 14, 2011) ("Here, the claims arising out of the state court trial appear to be completely unrelated, factually and legally, from the claims arising out of conditions at the jail."); *Robinson v. Delbalso*, No. 20-1171, 2020 WL 5602932, at *3 (M.D. Pa. Sept. 18, 2020) (citing *Nicholas v.*

---

[7] Additionally, "[a]llowing prisoners to improperly join separate and distinct claims against multiple defendants in a single action conflicts with the principles of the Prison Litigation Reform Act ("PLRA"), as it allows inmates to circumvent the PLRA's filing fee requirement as well as the penalties associated with filing frivolous actions." *Robinson*, 2020 WL 5602932, at *3 (citing 28 U.S.C. § 1915(g)).

*Heffner*, 228 Fed. App'x 139, 141 (3d Cir. 2007)  (striking amended complaint because "[e]ven though Robinson [had] the right to amend his complaint as of right . . . he may not amend it to set forth a new action against new defendants arising out of different sets of operative facts unrelated to the factual claims in the original complaint.")

Accordingly, the Court will strike all claims included in the AC except the excessive force claim asserted against Kalb, the failure to protect claims asserted against Fedder, Fondi, and Styles, and the battery claim asserted against Nurse Nick.  These claims will proceed in this case.  Wright may file a separate civil action to pursue the claims stricken from the AC.

### III. CONCLUSION

For the reasons stated, the Court will grant Wright's Motion insofar as it requests that the claims asserted against Nurse Dan in Wright's original Complaint be dismissed.  The remainder of the Motion will be denied as moot in light of the filing of the AC.  The official capacity claims asserted against Defendants Fedder, Fondi, Styles, and Kalb in the AC will be dismissed with prejudice.  The excessive force claim asserted against Defendant Kalb, the failure to protect claims asserted against Defendants Fedder, Fondi, and Styles, and the battery claim asserted against Nurse Nick will proceed in this action, and the Court will direct service of the AC on Nurse Nick.  The remainder of the AC will be stricken for the reasons stated herein.  If Wright wishes to pursue the stricken claims, he may do so in a separately filed civil action.

An appropriate order follows, which shall be docketed separately.

**BY THE COURT:**

*/s/ Joseph F. Leeson, Jr.*
**JOSEPH F. LEESON, JR.**
**United States District Judge**