UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| SEAN WRIGHT,<br>　　　　　Plaintiff, | :<br>:<br>: |  |
| v. | : | Civil No. 2:23-cv-5099 |
| UNIT MANAGER FEDDER, *et al.*,<br>　　　　　Defendants. | :<br>:<br>: |  |

**O P I N I O N**
**Defendants' Motion for Partial Summary Judgment, ECF No. 73 – Granted**
**Plaintiff's Motion for Jury Trial Demand, ECF No. 81 - Granted**

**Joseph F. Leeson, Jr.**　　　　　　　　　　　　　　　　　　　　　　　　　October 3, 2025
**United States District Judge**

I.　　　**INTRODUCTION**

　　　Plaintiff Sean Wright initiated this action pursuant to 42 U.S.C. § 1983 against Defendants Patrick Fedder, Robert Kalb, Wayne Styles, and Thomas Fondi (collectively, "Defendants"), alleging failure to protect and excessive force. These claims arise out of an attack on Wright by other inmates on December 28, 2021, and an incident involving Defendant Kalb on January 4, 2022, all of which occurred while Wright was incarcerated at SCI–Phoenix.

　　　Before the Court is Defendants' Motion for Partial Summary Judgment on the failure to protect claim. After review of the initial pleadings, Defendants' Motion, Wright's Response, Wright's Motion for Jury Trial Demand, and in consideration of the Court's previous Orders,[1] this Court finds that Wright failed to exhaust his administrative remedies with respect to the

---

[1]　　*See*, specifically, the Court's Orders dated May 17, 2024, July 22, 2024, August 22 and 26, 2024, October 22 and 28, 2024, November 18, 2024, December 5 and 16, 2024, January 22 and 28, 2025, June 3 and 26, 2025, and August 1, 2025. ECF Nos. 24, 36, 39, 42, 45-46, 52, 56, 60, 64, and 66.

failure to protect claim. For the reasons stated below, Defendants' Motion for Partial Summary Judgment and Wright's Motion for Jury Trial Demand are both granted.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Parties

*Pro se* Plaintiff, Sean Wright, is an inmate at SCI–Forest, however the facts of his claims relate to Wright's time at SCI–Phoenix. *See* Am. Compl., ECF No. 20. Defendants Patrick Fedder, Robert Kalb, Wayne Styles, and Thomas Fondi were all corrections officers at SCI–Phoenix during Wright's imprisonment term.[2] *Id.* at 2, 21. Fedder was also the Unit Manager. *Id.* at 2. As of the date of this opinion, they are the only four remaining defendants in this case.[3]

### B.  Undisputed Material Facts[4]

---

[2] The Amended Complaint and Opposition to the Partial Motion for Summary Judgment state that Fedder was a COIII, Fondi was a COII, Kalb was a COI, and Styles was a COI. *See* Am. Compl., ECF No. 20; Plaintiff's Brief in Opposition to the Motion for Partial Summary Judgment (Pl. Br.), ECF No. 83. Wright uses "CO" to abbreviate "Correctional Officer" and roman numerals to correspond with each officer's rank.

[3] Between the Complaint and Amended Complaint, Wright originally brought claims against more than a dozen defendants. The Court has since dismissed all but the four defendants mentioned above: Fedder, Fondi, Styles, and Kalb. These remaining defendants have collectively moved for partial summary judgment.

[4] Defendants, in their Motion for Partial Summary Judgment, provide a list of material facts. *See* ECF No. 73. Wright, in his Opposition to Defendants' Motion, states that the material facts section of Defendants' brief "cannot be stipulated by Plaintiff," *see* ECF No. 83 at 2, then provides a "Statement of Disputed Factual Issues" (consisting of an objection to Defendants' use of Wright's deposition transcript as an exhibit, followed by four legal questions), *see id.* at 4-5, and attaches as "Exhibit 1" to his brief an identical copy of the fact sheet in his Amended Complaint, *see id.* at 11-15.

Wright's objection to Defendants' use of his deposition transcript as an exhibit to their Motion does not demonstrate a genuine dispute of fact because Wright does nothing to contradict the facts as stated therein or to show that Defendants' list of material facts is unsupported by the deposition testimony. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."). Nor does Wright's blanket refusal to stipulate to Defendants' material facts in their Motion demonstrate a genuine dispute of fact. *See id.* at (e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule

On December 23, 2021, Wright received a write-up at SCI–Phoenix for refusing to leave the Restricted Housing Unit ("RHU") and move to a cell in J-Block. *Id.* at 11; Brief in Support of Defendants' Motion for Partial Summary Judgment (Def. Br.), ECF No. 73, at 1.[5] Wright informed the Unit Manager, Defendant Fedder, that he feared for his safety due to a conflict he had with two other inmates, Green and Johnson, who were housed on J-Block. Am. Compl. at 11; Def. Br. at 2. On December 28, 2021, Wright attended a misconduct hearing for his refusal to leave the RHU. *Id.* Fedder had the misconduct citation dropped. *Id.* Later that evening, Wright was released from the RHU and spoke with Defendant Fondi about the conflict he had with inmates Green and Johnson. *Id.* Fondi ignored Wright's concerns and denied him a place to put his personal property, so Wright had to carry the contents of his cell in a large bag from A-Block to J-Block.[6] *Id.*

---

56(c), the court may . . . consider the fact undisputed for purposes of the motion."); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (finding that, to defeat a motion for summary judgment, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue). Wright has not offered any factual evidence in contrast to Defendants' facts, nor has he shown that evidentiary facts essential to his opposition are otherwise unavailable to him. *See* Fed. R. Civ. P. 56(c)-(d). Considering this, the Court will deem Defendants' facts undisputed for purposes of the Motion, *see id.* at (e)(2), insofar as they do not clearly contradict Wright's facts as listed in his Amended Complaint and appended, verbatim, to his Opposition Brief, *see* ECF Nos. 20 and 83, at 11-15. Factual citations in this section will reference Defendants' Brief and Wright's Amended Complaint; though, any fact citation to the Amended Complaint can also be found on the same page number in the Opposition Brief.

[5]   The Brief in Support of Defendants' Motion for Partial Summary Judgment begins on page three of ECF No. 73, following the Motion and Proposed Order. Because the Brief in Support has its own pagination (1 through 7), any page references to Defendants' Brief will use these page numbers, not the ECF page numbers (3 through 9).

[6]   This undisputed fact appears relevant to Wright's tort claim. Wright separately alleges that Defendants failed to secure his property or to allow him to secure it, and that this provided an opportunity for other inmates to steal items from his bag of personal belongings during or after his attack on December 28, 2021. *See* Am. Compl. at 11; Pl. Br. at 11. Defendants do not speak to whether Wright's property was left unsecured or stolen, and this detail is not relevant to the issue before us.

Upon arriving at J-Block, Wright spoke with Defendant Styles about his conflict with inmates Green and Johnson. *Id*. Styles then opened the cell door for one of these inmates,[7] and both Green and Johnson proceeded to attack Wright. *Id*. After the attack, Wright was transported to medical to check on his injuries. *Id*.

### C. Wright's Initial Grievance

On January 11, 2022, Wright filed Grievance No. 963398 against Defendants Fedder and Fondi,[8] along with several other non-parties, for orchestrating the December 28, 2021, assault on him by inmates Green and Johnson. *See* Grievance, ECF No. 73-2, at 3. *See also* Def. Br. at 6; Pl. Br. at 13. On the grievance form, underneath the instruction to "[s]tate all relief that you are seeking," Wright wrote the following: "I want each employee involved to hand over their bond for liquidation purposes and I reserve all rights and remedies." *See* Grievance. On February 3, 2022, Wright's Grievance was denied as having "no validity." *See* ECF No. 73-2 at 4. Wright filed an appeal, claiming inadequate investigation, restating the events of December 28, 2021,

---

[7]     Defendants' Brief states that Styles opened the door "for either Inmate Green or Johnson." Def. Br., ECF No. 73, at 2. Wright's Amended Complaint and Opposition Brief state that "Styles opened the door for inmate Johnson," and that Green and Johnson "were both being housed on J-blk." *See* Am. Compl. and Pl. Br., at 11. By contrast, however, Wright's Amended Complaint also says inmate Johnson "was housed on a different Pod," *see* Am. Compl. at 11, and his Deposition appears to suggest that at least one of the two inmates, either Green or Johnson, was not housed on J-Block, but that Styles opened the door to the block so that said inmate could enter the unit. *See* ECF No. 73-1 at 12-13. Nevertheless, all parties appear to agree, at base, that Styles is responsible for opening *a* door which gave at least one of the two inmates—either Green or Johnson—access to Wright in the moments before his attack.

[8]     Grievance Number 963398 is the only prison grievance appended to the parties' briefing and filed in this case, and both parties concede that it is Wright's "initial" grievance; the Court will accept and refer to it as such.
      In Wright's initial grievance there is no mention of Defendants Styles or Kalb, except under the section that reads "[l]ist actions taken and staff you have contacted, before submitting this grievance," where Defendant Kalb's name is barely cognizable in light ink, along with Fondi, Fedder, and the names of other non-party corrections officers. *See* ECF No. 73-2. Defendants appear to concede, however, that this January 11, 2022, grievance is brought against Styles inasmuch as it is against Fedder and Fondi. *See* Def. Br. at 6.

and implicating Defendant Styles seemingly for the first time. *See id.* at 5. On March 1, 2022, Wright's grievance appeal was denied. *See id.* at 6. On March 13, 2022, Wright filed an Inmate Appeal to Final Review, in which he again recalled the events of December 28, 2021, and added several new allegations, including one against Defendant Kalb for assaulting him on January 4, 2022. *See id.* at 7. Wright ended his final appeal with the following request for relief: "I want $3,000,000.00 and all my legal rights restored and transferred to the institution of my choice. I reserve all rights and remedies." *Id.*

### D. Procedural History

On December 21, 2023, Wright filed a Complaint in this Court against the Defendants, alleging they violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to protect him from violence at the hands of other inmates. *See* ECF No. 2. In his Amended Complaint, filed March 14, 2024, Wright asserted First Amendment violations, Eighth Amendment violations, and a tort claim relating to his personal property. *See* ECF No. 20. In a May 17, 2024, Memorandum Opinion and Order, this Court struck all claims except those for excessive force, failure to protect, and battery. *See* ECF Nos. 23-24. As of October 22, 2024, the Court had also dismissed the battery claim and terminated the defendants against whom it was brought. *See* ECF Nos. 42, 45.

On May 12, 2025, the four remaining defendants, Patrick Fedder, Robert Kalb, Wayne Styles, and Thomas Fondi (collectively, "Defendants"), filed a Motion for Partial Summary Judgment on the failure to protect claim, arguing that Wright did not exhaust his administrative remedies as required by the Prison Litigation Reform Act because his current request for monetary relief was not clearly stated in his initial prison grievance. *See* ECF No. 73. On June 3, 2025, the Court ordered Wright to respond to the Motion. *See* ECF No. 76. Wright then filed a

Motion for Jury Trial Demand, dated June 13, 2025, *see* ECF No. 81, and a Declaration and Brief in Opposition to Defendants' Motion for Partial Summary Judgment ("Response in Opposition"), dated June 30, 2025, *see* ECF No. 83. Wright also filed a Motion for Leave to file a second amended complaint, dated July 21, 2025, *see* ECF No. 84, which the Court denied on August 1, 2025, *see* ECF No. 85.

III.  **LEGAL STANDARDS**

    A.  **Motion for Partial Summary Judgment – Review of Applicable Law**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of the case under substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*. at 248, 257.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). A party asserting that a fact cannot be or is genuinely disputed must support that assertion by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse

party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The court must consider the evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the court may "give an opportunity to properly support or address the fact;" "consider the fact undisputed for purposes of the motion;" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

    B. **42 U.S.C. § 1983 Claims – Review of Applicable Law**

42 U.S.C. § 1983 is the vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Additionally, a "defendant in a civil rights action must have personal involvement in the alleged wrongs." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Moreover, "[b]ecause vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

"In actions under 42 U.S.C. § 1983, federal courts apply the state's statute of limitations for personal injury." *Sameric Corp v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). The

statute of limitations for personal injury actions in Pennsylvania is two years. *See id.*; 42 Pa. C.S.A. § 5524. "A section 1983 cause of action accrues when the plaintiff knew or should have known of the injury upon which its action is based." *Sameric Corp.*, 142 F.3d at 599. "Rule 15(c) can ameliorate the running of the statute of limitations on a claim by making the amended claim relate back to the original, timely filed complaint." *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001). The Rule provides: an "amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "The rationale of Rule 15(c) is that a party who has not been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n.3 (1984).

### a. Failure to Protect Claim – Review of Applicable Law

Prison administrators "are under an obligation to take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). An Eighth Amendment claim for failure to prevent harm has two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." *See id.* (internal quotations and citations omitted). "To state a claim for damages against a prison official for failure to protect from inmate violence, an inmate must [also] plead facts that show . . . the official's deliberate indifference caused him harm." *Bistran v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012), *abrogated on*

*other grounds, Mack v. Yost*, 968 F.3d 311, 319 n.7 (3d Cir. 2020). Under the first element, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the second element, the "state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* "In light of *Farmer*, [the Third Circuit Court of Appeals] adopted a subjective knowledge standard to establish deliberate indifference, requiring a showing that prison officials actually knew of and disregarded constitutional violations." *Thomas v. Tice*, 948 F.3d 133, 138-39 (3d Cir. 2020). The defendant prison officials "must actually [have been] aware of the existence of the excessive risk; it is not sufficient that [prison officials] should have been aware." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001). A defendant's knowledge can be proven by circumstantial evidence that the risk was so obvious the official must have known. *See id*.

### C. Exhaustion under the Prison Litigation Reform Act ("PLRA") – Review of Applicable Law

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all available administrative remedies before bringing suit related to the conditions of their confinement. 42 U.S.C. § 1997e(a). *See Perttu v. Richards*, 605 U.S. 460, 465 (2025); *Woodford v. Ngo*, 548 U.S. 81, 88 (2006) (explaining that proper exhaustion under the PLRA requires a prisoner to "complete the administrative review process in accordance with the applicable procedural rules . . . as a precondition to bringing suit in federal court"). *See also Alexander v. Forr*, No. 3:04-0370, 2005 WL 2416099 at *7 (M.D. Pa. July 26, 2005) ("If a prisoner does not exhaust available administrative remedies, the claims should be dismissed.") (citing *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 761-62 (3d Cir. 1998)). An inmate's failure to exhaust these administrative remedies is an affirmative defense that, if brought, must be proven by the defendant. *See Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018) (citing *Ray v. Kertes*,

285 F.3d 287, 295 (3d Cir. 2002). "[I]t is the prison's requirements and not the PLRA that define the boundaries of proper exhaustion." *Woods v. Terra*, No. 23-2178, 2024 WL 5047853, at *5 (E.D. Pa. Dec. 9, 2024) (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)).

"The purpose of the grievance process is to 'put the prison officials on notice of the persons claimed to be guilty of wrongdoing.'" *White v. Wireman*, No. 16-675, 2018 WL 10456721, at *12 (M.D. Pa. Oct. 15, 2018) (quoting *Spruill v. Gillis*, 372 F.3d 218, 234 (3d Cir. 2004)), *adopted by* 2020 WL 869863 (M.D. Pa., Feb. 21, 2020). Therefore, to put officials on notice, the relief requested in an inmate's initial grievance must be stated "with specificity[,]" subject to the applicable prison grievance policy. *See Wright v. Sauers*, No. 13-358, 2017 WL 3731957 at *6–7 (W.D. Pa. Aug. 30, 2017) (quoting *Spruill*, 372 F.3d at 233-234). *See also Preacher v. Overmyer*, No. 17-18, 2020 WL 43420, at *8 (W.D. Pa. Jan. 3, 2020) ("[A]n inmate who 'desires compensation or other legal relief normally available from a court' must 'request the relief with specificity in his/her initial grievance.'") (internal citation omitted). However, for exhaustion purposes, an inmate's grievance need not "perfect[ly] overlap" with the claims in the complaint, so long as there is a "shared factual basis between the two[.]" *See Jackson v. Ivens*, 244 Fed. App'x. 508, 513 (3d Cir. 2007) (citing *Woodford*, 548 U.S. at 95 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.")).

IV.   ANALYSIS

A.  Requesting Monetary Relief

The narrow issue presented in Defendants' Motion is whether Wright has properly exhausted his administrative remedies under the Prison Litigation Reform Act of 1995 ("PLRA") by requesting monetary damages in his initial prison grievance. Here, the applicable prison

grievance procedure is Section 1(A)(11) of Pennsylvania Department of Corrections Policy DC-ADM 804, which states: "If the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance." "While a request for monetary relief in a grievance need not set forth a specific dollar amount, the inmate must make a clear request for compensation." *Stanley v. Little*, No. 23-4571, 2024 WL 3678987, at *5 (E.D. Pa. Aug. 6, 2024) (cleaned up; internal quotations omitted); *see also Sides v. Pennsylvania Dep't of Corr.*, No. 2:18-145, 2020 WL 1493549, at *7 (W.D. Pa. Mar. 27, 2020) ("DC-ADM 804 § 1.A.11.d does not require that an inmate must set forth a certain dollar amount in his grievance. It requires only that if an inmate desires compensation, he must 'request that specific relief[.]'"). This requirement serves to place the prison "on notice of the prisoner's demand or valuation of his or her claim, and furthers the PLRA's underlying litigation avoidance goals by supporting early settlement or accommodation." *Wright*, 2017 WL 3731957, at *7.

Defendants Fedder, Fondi, Styles, and Kalb argue that they are entitled to judgment on Wright's failure to protect claim because Wright's Amended Complaint states a request for monetary relief on this count, but his initial prison grievance does not. *See* Def. Br. at 3-5. Defendants assert that Wright's demand that "each employee involved . . . hand over their bond for liquidation purposes" is "vague and non-specific" and "does not qualify as a specific request for monetary compensation, as required by DC-ADM 804." *Id.* at 6. Wright argues that the words "bond" and "liquidation" should qualify as a request for monetary compensation because the 2022 edition of the Merriam-Webster Dictionary defines "bond" as a verb meaning "to insure against losses caused by acts of," and "liquidate" as a verb meaning "to pay off." Pl. Br. at 7-8. In the alternative, Wright argues that even if these terms do not qualify, the phrase "I reserve all

rights and remedies" should have served as a catch-all for any available relief, including monetary. Pl. Br. at 7-8. Wright further contends that he made clear his request for monetary relief when he asked for $3,000,000 in damages in his final grievance appeal. *See id.*

The Court is rarely presented with an exhaustion issue that hinges on its interpretation of the words used by a prisoner in his initial grievance. More often than not, a prisoner will explicitly state his request for relief, *see, e.g., Woods*, 2024 WL 5047853, at *6 ("I would like $300,000 in relief for the assault"); *Tootle v. Long*, No. 20-235, 2022 WL 17095603, at *5 (W.D. Pa. Oct. 31, 2022) ("I seek the following relief of Monetary Damages"), or will state no request for relief at all, *see Walker v. Little*, No. 22-3451, 2023 WL 2570562, at *2 (3d Cir. Mar. 20, 2023). Wright's choice of the words "bond" and "liquidation" are unique, and certainly atypical, in a prison grievance which forms the basis for a section 1983 failure-to-protect claim. Courts within the Third Circuit have before found that prisoners seeking monetary relief in federal court *met* the exhaustion requirement under DC-ADM 804 where their initial grievance requested either (a) a dollar amount in desired compensation, *see Woods*, 2024 WL 5047853, at *6 ("Also, I would like $300,000 in relief for the assault."); *West v. Letizio*, No. 23-3694, 2024 WL 1977153, at *4 (E.D. Pa. May 2, 2024) (West "requested $350,000 dollars in compensatory and punitive damages."); or (b) "money" or "monetary" damages, in no sum certain, *see Tootle*, 2022 WL 17095603, at *5 ("The grievance then reads in pertinent part as follows: . . . I seek the following relief of Monetary Damages."). Courts within the Third Circuit have also found that prisoners seeking monetary relief *did not* meet the exhaustion requirement where their initial grievance sought: (a) no relief, *see Walker*, 2023 WL 2570562, at *2; (b) "whatever relief may be available," *see Stanley*, 2024 WL 3678987, at *5 ("Stanley's request for 'whatever the courts may deem necessary' does not satisfy the requirements of DC-ADM 804."); or (c) some other

non-monetary relief, *see Mills v. Rogers*, No. 20-00266, 2024 WL 3034099, at *18 (M.D. Pa. June 17, 2024) ("Plaintiff requested the following forms of relief in his initial grievance . . . a written apology . . . to receive adequate medical treatment . . . [and] no retaliation."); *Cramer v. Bohinski*, No. 22-583, 2024 WL 1557377, at *3 (M.D. Pa. Apr. 10, 2024) ("In his initial grievance, Cramer's only requested relief was to be granted access to the law library."); *Perez v. Reno*, No. 22-01021, 2023 WL 6051258, at *3 (M.D. Pa. Sept. 15, 2023) (Plaintiff's request for relief said "I want to be separated from all inmates and staff that were involved in this incident."); *Ivy v. Oberlander*, No. 21-00109, 2023 WL 3766018, at *3–4 (W.D. Pa. June 1, 2023) (Plaintiff's grievances requested as relief "access to paper [and] adequate access to the law library," as well as "more time in the law library."); *Rasheed v. Saez*, No. 20-00154, 2022 WL 14068766, at *5 (M.D. Pa. Oct. 24, 2022) ("Plaintiff's initial grievance[] clearly does not request any monetary relief but asks that the officer involved in the incident be fired."). None of these cases, however, involved a prison grievance which featured quasi-monetary terms but forwent the use of words like "monetary," "payment," "compensation," or "money damages."

Essentially, Wright's grievance would satisfy the exhaustion requirement if it made Defendants aware of Wright's claims and his desire for monetary compensation. *See White*, 2018 WL 10456721, at *12 (explaining that the purpose of the grievance process is to "put the prison officials on notice" of the aggrieved plaintiff's claims and basis for relief). The Court, however, finds that the language "I want each employee involved to hand over their bond for liquidation purposes" did not serve to put Defendants on notice of Wright's claim for money damages. *See* Grievance. Wright has not provided any facts in support of the assertion that Defendants owed him a preexisting financial obligation or were otherwise indebted to him before January 11,

2022. Thus, it is not clear to what obligation Wright refers by his use of the word "bond."[9] Still, he asserts that Defendants were meant to interpret this as an indication of their potential liability. The Court also does not read the grievance to communicate Wright's desire to receive financial compensation *from* Defendants. The grievance does not specify to whom Defendants should deliver their "bonds" or how they would be "liquidated," and this request is broadly addressed to "each employee" involved. *See id.* In all, the Court finds that Wright did not clearly state in his initial grievance a request for monetary relief, such that the Defendants would be privy to that request.

Wright argues in the alternative that the statement "I reserve all rights and remedies" serves to cover any available relief, but our sister districts have held that such a statement is not enough to meet the exhaustion requirements of DC-ADM 804. *See, e.g., Stanley*, 2024 WL

---

[9] The Court cannot confirm the accuracy of the definitions Wright cites from the 2022 edition of Merriam-Webster's Dictionary, but the 2025 edition defines the noun form of "bond" in part as: "a binding agreement;" "an obligation made binding by a forfeit of money;" or a "certificate of public or private indebtedness." *See Bond*, Merriam-Webster Dictionary (2025). The same edition defines "liquidation" as a determination "by agreement or by litigation" of "the precise amount of (indebtedness, damages, or accounts);" the determination of liabilities; or the settlement of a debt by payment. *See Liquidate*, Merriam-Webster Dictionary (2025).

Similarly, Black's Law Dictionary defines a "bond" as "[a]n obligation or promise," or a "written promise to pay money or do some act if certain circumstances occur or a certain time elapses," *see Bond*, Black's Law Dictionary (12th ed. 2024). Black's Law Dictionary also defines "liquidation" as the "act of determining by agreement or by litigation the exact amount of something (as a debt or damages) that before was uncertain;" the "act of settling a debt by payment or other satisfaction;" or the "act or process of converting assets into cash, esp. to settle debts," *see Liquidation*, Black's Law Dictionary (12th ed. 2024).

Crucially, all of these definitions depend on the pre-existence of an *obligation* between parties that have contracted or otherwise agreed that the occurrence of a condition will make one side indebted to the other. Though prison administrators "are under an obligation to take reasonable measures to guarantee the safety of the inmates," *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984), not "every injury suffered by one prisoner at the hands of another[] translates into constitutional liability for prison officials responsible for the victim's safety," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), nor does it communicate a desire for financial compensation without the prisoner explicitly stating so. Even so, a corrections officer's "obligation" to take reasonable measures with regard to inmate safety is rarely referred to by the word "bond."

3678987, at *5 ("Stanley's request for "whatever the courts may deem necessary" does not satisfy the requirements of DC-ADM 804."). Also, to the extent Wright argues that his request for $3,000,000.00 in the final appeal of his grievance counts as a request for monetary relief, this does not comport with DC-ADM 804, which states that such a request must be made in the prisoner's *initial* grievance. *See Rasheed*, 2022 WL 14068766, at *5 ("Plaintiff asserts that he did request $1.5 million in his grievance. However, Plaintiff cites to his appeal of the initial grievance decision filed on a form DC-135A. As Plaintiff failed to request monetary damages in his initial grievance, he may not pursue such damages now in his federal complaint.") (internal citations omitted). Everything considered, Wright still has not met the exhaustion requirement.

### B. Exhaustion When Remedy is Unavailable

Wright argues separately that he was not obligated to exhaust his administrative remedies because they were unavailable. *See* Pl. Br. at 7-8. In doing so, he cites to *Ross v. Blake* for the principle that an administrative procedure is "unavailable" (i) "when[] it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (ii) "[w]hen rules are 'so confusing that ... no reasonable prisoner can use them' . . . [and] no ordinary prisoner can make sense of what it demands"; and (iii) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." 578 U.S. 632, 643-44 (2016).

 Here, Wright has not alleged facts in support of an assertion that the officers at SCI–Phoenix were "unable or consistently unwilling to provide any relief" to him, or that prison administrators attempted to prevent him from taking advantage of a grievance process through machination, misrepresentation, or intimidation. Rather, the record indicates that Wright's prison grievance and appeals were all reviewed and responded to in a timely manner. *See* ECF No. 73-

2. Wright has also not alleged that the procedural requirements of DC-ADM 804 were "so confusing" that he was unable to comply. To the contrary, Wright made clear in his Opposition Brief that he understood that the rule required him to state any requested relief in his initial grievance as a prerequisite to exhausting his administrative remedies. *See* Pl. Br. at 6, 8.

To the extent Wright argues that monetary relief was unavailable as an administrative procedure through the prison, the Supreme Court has held that prisoners are still "required to exhaust all 'available' remedies before pursuing any suit challenging prison conditions whether under § 1983 or not, *regardless* of whether they do or do not meet federal standards, and even where the relief sought – such as monetary damages – *cannot be granted* by the administrative process." *Woods*, 2024 WL 5047853, at *5 (emphasis added) (citing *Woodford*, 548 U.S. at 85; *Nyhuis v. Reno*, 204 F.3d 65, 75, n. 10 (3d Cir. 2000)). "An inmate must make a request for compensation even where monetary relief is unavailable through the grievance process and the incarcerated plaintiff otherwise gives 'a detailed account of the underlying incident' in their grievance." *Stanley*, 2024 WL 3678987, at *5. Thus, it matters not whether Wright could have obtained monetary relief through the prison; he still had to request that specific relief in his initial grievance to satisfy the exhaustion requirement before filing suit in this Court.

V.     **CONCLUSION**

Following a review of the administrative record and briefing, this Court concludes that Wright failed to exhaust his administrative remedies with respect to the failure to protect claim. Wright did not specifically request in his initial prison grievance the monetary relief that he now seeks in this Court. Summary judgment is granted in favor of Defendants on the failure to protect claim. Since the failure to protect claim is brought against Defendants Fedder, Fondi, and

Styles,[10] these three defendants will be terminated. The excessive force claim, which is brought against Defendant Kalb, only, and is not the subject of the instant Motion, shall continue. Defendants' Motion for Partial Summary Judgment is granted. Plaintiff's demand for jury trial is also granted.

      A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[10] The Court, having noted that Wright's initial grievance makes clear allegations against Fedder and Fondi and obscurely mentions Styles as having been notified of the same, nonetheless follows the parties' concession that the failure to protect claim outlined in Wright's initial grievance is brought against Fedder, Fondi, and Styles, but not against Defendant Kalb. *See* Def. Br. at 6. Although all four Defendants bring the Motion, the order granting it will only serve to terminate three of them, and the excessive force claim shall continue against Kalb.