**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SEAN WRIGHT, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 2:23-cv-5099 |
| | : | |
| COL. R. KALB, | : | |
| Defendant. | : | |

**O P I N I O N**
**Plaintiff Sean Wright's "Motion to Presume to Trial," ECF No. 101 – Denied**
**Defendant Kalb's Motion to Enforce Settlement, ECF No. 110 - Granted**

**Joseph F. Leeson, Jr.**                                            **June 3, 2026**
**United States District Judge**

## I.    INTRODUCTION

This matter was closed after the Court was informed that the remaining parties to the case

had reached a settlement in February 2026. The Court was then notified that, upon being

provided with the Release and Settlement Agreement, Plaintiff Sean Wright refused to sign.

Currently before the Court are two competing motions related to the enforceability of the alleged

settlement: Plaintiff Wright's Motion for Trial and Defendant Robert Kalb's Motion to Enforce

Settlement. After conducting an evidentiary hearing on the two motions, and for the reasons

discussed below, the Court will deny the Motion for Trial and grant the Motion to Enforce

Settlement.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

*Pro se* Plaintiff, Sean Wright, is currently an inmate at SCI–Albion, however the facts of

his case relate to Wright's time at SCI–Phoenix. *See* Am. Compl., ECF No. 20. Defendant

Robert Kalb was a corrections officer at SCI–Phoenix during Wright's imprisonment term there. *Id.* at 2, 21. As of the date of this opinion, Kalb is the only remaining defendant in this case.[1]

Wright initially sued several corrections officers, a unit manager, and two medical personnel employed at SCI–Phoenix, alleging violations of the First Amendment, Eighth Amendment, and a tort claim relating to his personal property. *See* Compl., ECF No. 2; Am. Compl., ECF No. 20. In a May 17, 2024, Memorandum Opinion and Order, this Court struck all claims except those for excessive force, failure to protect, and battery. *See* ECF Nos. 23-24. On October 22, 2024, the Court also dismissed the battery claim and terminated the defendant against whom it was brought. *See* ECF No. 45. On October 3, 2025, the Court granted partial summary judgment on the failure to protect claim and terminated the defendants against whom it was brought. *See* ECF Nos. 87-88.

As of November 2025, Wright had one remaining claim in this matter: an excessive force claim brought under the Eighth Amendment to the United States Constitution, stemming from an incident he had with Kalb at SCI–Phoenix on January 4, 2022. *See* ECF No. 88 ¶ 1 n.1. The parties were referred to Magistrate Judge Pamela A. Carlos to conduct settlement discussions, and in early February 2026, the Court was notified that Wright and Kalb had settled the above-captioned action. On February 3, 2026, the Court dismissed the case with prejudice pursuant to Fed. R. Civ. P. 41.1(b), *see* ECF No. 100, but was soon after notified that Wright refused to sign the Release and Settlement Agreement (hereinafter "Agreement") provided to him by defense counsel. On February 11, 2026, the Court received and docketed a "Motion to Presume to Trial" (hereinafter "Motion for Trial") signed and dated by Wright on February 4, 2026. *See* Motion for

---

[1]    Between the Complaint and Amended Complaint, Wright originally brought claims against more than a dozen defendants. The Court has since dismissed all but one defendant: Robert Kalb.

Trial, ECF No. 101. In it, Wright states that "after reviewing the Release and Settlement Agreement by the Defendants, the plaintiff has determined to go to trial; notifying the Courts so there is no confusion as to an agreement being made." *Id.* Kalb responded to Wright's Motion for Trial, *see* ECF No. 109, and simultaneously filed a Motion to Enforce Settlement, *see* ECF No. 110, both of which were docketed on April 6, 2026.

The Court held an evidentiary hearing on these motions on June 2, 2026.[2] At the hearing, defense counsel made clear his position that the settlement was intended to "resolve the entire case," that the terms provided for a release of all claims in this matter in exchange for $7,000, and that this was communicated to Wright during settlement negotiations. Wright indicated that he wished to retain his right to appeal the final judgments on his prior claims (brought against defendants other than Kalb, who are now terminated). Wright stated that it "wasn't apparent" to him that the settlement terms included a release of all claims. Magistrate Judge Carlos was called as a witness, and gave the following testimony regarding her settlement discussions with the parties: "On February 2, 2026, I had a forty-two minute discussion with Mr. Wright. . . . He advised me that he would take $7,000 in exchange for full release of all claims and there would be no [non-]economic terms." Judge Carlos explained that, once authorized by defense counsel to extend a settlement offer of $7,000 to Wright, she "got back to Mr. Wright [and] told him 'I have $7,000 in exchange for a full release of all claims, no [non]economic terms,'" to which Wright agreed. Judge Carlos testified that Wright did not ask questions or indicate that he had any confusion regarding these terms. In response to defense counsel's arguments regarding the terms of the Agreement, Wright stated, "I agree with all of that," but indicated that he was

---

2    Present at the hearing held on June 2, 2026, were Plaintiff Sean Wright, *pro se*, and Attorney Kevin Bradford of the Pennsylvania Office of the Attorney General, on behalf of Defendant Robert Kalb.

disconcerted by the "fine print" in the Agreement upon seeing it in writing for the first time. At the conclusion of the hearing, the Court took the matter under advisement. Now, after a review of the record and the evidence presented at the June 2, 2026 hearing, the Court is prepared to render a decision on the Motion for Trial and the Motion to Enforce Settlement.

## III.    LEGAL STANDARDS

### A.  Motion to Enforce a Settlement Agreement

As a general rule, courts "encourage attempts to settle disagreements outside the litigative context." *Wilcher v. City of Wilmington*, 139 F.3d 366, 372 (3d Cir. 1998). However, "[i]t is well settled that a federal court has the inherent power to enforce and to consider challenges to settlements entered into in cases originally filed therein." *Dugan v. O'Hara*, 125 F. Supp. 3d 527, 534 (E.D. Pa. 2015) (quoting *Fox v. Consol. Rail Corp.*, 739 F.2d 929, 932 (3d Cir. 1984)). "The validity and enforceability of settlement agreements is governed by state contract law." *Id.* at 535 (quoting *Shell's Disposal & Recycling, Inc. v. City of Lancaster*, 504 F. App'x 194, 200 (3d Cir. 2012)). "It is by now axiomatic under Pennsylvania law that 'the test for enforceability of [a settlement] agreement is whether both parties have manifested an intention to be bound by its terms and whether the terms are sufficiently definite to be specifically enforced.'" *Id.* (quoting *Calif. Sun Tanning USA, Inc. v. Elec. Beach, Inc.*, 369 F. App'x 340, 346 (3d Cir. 2010)). Motions to enforce a settlement agreement are evaluated under the same standard as a motion for summary judgment "because the central issue is whether there is any disputed issue of material fact as to the validity of the settlement agreement." *Id.* "[T]he non-movant's assertions must be treated as true; the non-movant must be given the benefit of the doubt when their assertions conflict with the movant's assertions; and the movant must be entitled to enforcement as a matter of law." *Id.* "[T]he non-movant must provide evidentiary support for any assertions on which it wishes to rely in opposing a motion to enforce settlement." *Id.*

IV.     ANALYSIS

The Court is tasked with determining whether an enforceable settlement agreement was reached in this case and if so, under what terms. The June 2, 2026, hearing made clear that the parties disagreed not over whether an agreement was reached, but whether said agreement provided for the release of all claims in this litigation.[3] The Court finds that it did.

Judge Carlos was tasked with facilitating settlement discussions in this matter. In court on June 2, she testified that she communicated various settlement demands and offers back and forth between the parties until a final offer of $7,000 was reached. She testified that in her "final" discussion with Wright on February 2, 2026, she communicated that Kalb's offer of $7,000 was in exchange for a release of Wright's claims in this matter and that it would not include non-economic terms (such as a guaranteed date of payment). She then testified that Wright "advised [her] that he would take $7,000 *in exchange for full release of all claims*." The Agreement was then drafted accordingly.

The Court finds the testimony of Magistrate Judge Carlos to be credible. It is apparent from the evidence presented that both parties gave Judge Carlos the authority to proceed on their behalf and to express their wishes with regard to the settlement terms. Given the communication of terms in these settlement discussions, and the express assent Wright gave to Judge Carlos to settle the matter for "$7,000 in exchange for full release of all claims," the Court finds that Wright manifested a clear intention to be bound by those terms.[4] *See Dugan*, 125 F. Supp. 3d at 535 (citing *Calif. Sun Tanning USA*, 369 F. App'x at 346). These terms were clearly defined and

---

[3]     The Court finds that there was no dispute of fact regarding whether a settlement agreement was reached in February 2026. *See Dugan v. O'Hara*, 125 F. Supp. 3d 527, 535 (E.D. Pa. 2015).

[4]     The Court also finds that Kalb, by and through his counsel, expressed assent to be bound by the terms in his offer. *See Dugan*, 125 F. Supp. 3d at 535.

expressly agreed to. That Wright had reservations regarding the "fine print" in the written Agreement, does not change this. The Court finds that Kalb is entitled to enforcement as a matter of law. *See id.*

## V.   CONCLUSION

Following a review of the parties' Motions, the memoranda filed in opposition to, and in support thereof, and the evidence presented in court on June 2, 2026, this Court finds that no dispute of fact exists regarding the terms of the settlement. The Court concludes that Wright knowingly agreed to settle this case for $7,000 in exchange for the release of all claims in this matter, with no non-economic terms. Accordingly, Kalb's Motion to Enforce Settlement is granted, and the case remains closed. Since there are no triable issues remaining in the case, Wright's Motion for Trial is inapposite, and will be denied.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

060326